**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JACOB RAMIE PRATT                         )
                                          )
          Plaintiff,                      )          3:10-cv-00615-RCJ-VPC
                                          )
              v.                          )          **REPORT AND RECOMMENDATION**
                                          )          **OF U.S. MAGISTRATE JUDGE**
                                          )
MINNIX, ET AL.                            )
                                          )          July 1, 2011
          Defendants.                     )
_____)

       This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United

States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment

(#22).[1]  Plaintiff opposed (#25), filed additional affidavits in support of his opposition (#27), and

submitted a supplemental response to the video (#29).  Defendants replied (#26).  The court has

thoroughly reviewed the record and recommends that defendants' motion for summary judgment

(#22) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

       Plaintiff Jacob Ramie Pratt ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State

Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#5).  Plaintiff's

civil rights complaint, filed on October 1, 2010, alleges that defendants Minnix, Perkins, Horsley,

Deeds, Postma, and Does 1-4, employed excessive force against him on January 31, 2010, during

a planned cell extraction.  *Id.*  Plaintiff also claims that defendants were deliberately indifferent to

his medical need for treatment of injuries he sustained during removal from his cell.  *Id.*  The court

screened plaintiff's complaint pursuant to 28 U.S.C. § 1915 and allowed plaintiff's excessive force

claim against all defendants and his deliberate indifference claim against defendants Minnix and

---

[1]       Refers to the court's docket numbers.

1   John Doe #4 to proceed (#4).

2         In count one of plaintiff's complaint, he claims that defendant Minnix "ordered correctional

3   officers to extract inmates who . . . flooded . . . their cells" (#5, p. 5).  Plaintiff admits to flooding

4   his cell "to bring attention to several assults [sic] he was watching happen from his cell."  *Id.*  At

5   approximately 6:30[2] on January 31, 2011, correctional officers approached plaintiff's cell door.  *Id.*

6   Defendant Minnix instructed plaintiff to "cuff up" through the cell door and then sprayed a chemical

7   agent into plaintiff's cell.  *Id.*  Plaintiff claims that after an additional use of the chemical agent

8   against him without a warning to "cuff up," defendants Minnix and Horsley "told approximately ten

9   (10) correctional officers to line up and prepare to enter Plaintiff's cell." *Id.* at 5-6.  Plaintiff states

10  that prior to entering his cell, defendant Minnix told defendant Perkins to turn off the video camera

11  he was using to record the cell extraction.  *Id.* at 6.  Defendant Perkins complied.  *Id.*

12        Defendants entered plaintiff's cell, subdued and restrained him, including removing a weapon

13  from his possession.  *Id.*  Plaintiff claims that while restrained he was punched in the face ten to

14  twelve times by defendant John Doe #1, rammed into a slider door by defendant John Doe #2, and

15  slammed into a wall repeatedly by defendant Postma and/or defendant Deeds.  *Id.*  Plaintiff states

16  that he was pinned against a wall and defendants John Doe #3 and #4 pinched and twisted his nipples

17  and body slammed him into the floor at defendant Minnix's direction.  *Id.*  Finally, plaintiff claims

18  that defendant Postma rammed him into two slider doors, while holding a handful of plaintiff's hair,

19  and defendant Deeds "beat Plaintiff's head into his . . . cell wall multiple times."  *Id.*  These acts

20  resulted in plaintiff "bleeding badly with an eye swollen shut, a broken nose and cut lips."  *Id.*

21  Plaintiff claims his entire face was a deep purple color after the attack.  *Id.*

22        Plaintiff's second count states that defendants were deliberately indifferent to his medical

23  needs because they refused to provide medical treatment for his injuries for five days following the

24  alleged attack.  *Id.* at 7.  Specifically, plaintiff claims that defendant Minnix prevented medical

25  personnel from attending to his injuries immediately after the attack, permitting them only to wipe

26  his face with gauze.  *Id.*  Further, plaintiff alleges that once placed back into a cell, senior officer

27

---

[2]         Plaintiff does not specify in his complaint whether the extraction took place at 6:30 a.m. or 6:30 p.m.
However, defendants' motion specifies that the cell extraction occurred in the evening (#22, p. 3).

1  John Doe #4 would not allow him to file a medical kite, nor was he provided an opportunity to wash

2  off the chemical agent that defendants used against him.  *Id.*

3       Defendants filed the present motion for summary judgment on March 15, 2011, seeking

4  summary judgment in favor of all defendants for plaintiff's excessive force claim, and for defendants

5  Horsley, Perkins, Postma, and Deeds for plaintiff's deliberate indifference to a medical need claim

6  (#22).  Defendants explain that "a number of correctional officers led by former NDOC Lieutenant

7  James Minnix used physical force to sequentially remove approximately a dozen inmates from their

8  cells via a process NDOC commonly refers to as 'cell extraction' or a 'planned-use-of-force.'"  *Id.*

9  at 2.   Defendants Horsley, Postma, and Deeds participated in the extraction under defendant

10  Minnix's direction, while defendant Perkins operated the video camera to document the process

11  pursuant to NDOC policy.  *Id.* at 3.  Defendants provide a description of the cell extraction in their

12  brief, attach defendants' declarations relating the events, and also submit to the court a video

13  recording of the extraction.[3]  Defendants also attach Operating Procedure ("OP") 405 for ESP (#22-

14  1, p. 2-15).[4]  The specific facts detailed below are based on defendants' briefing and declarations,

15  which the court carefully reviewed.

16       When the cell extraction team approached plaintiff's cell door, the light was off (#22, p. 3).

17  Defendant Minnix instructed plaintiff to "hook up," and warned plaintiff that they would administer

18  chemicals if he failed to comply.  *Id.*  During this time, defendant Pratt notified defendant Minnix

19  that the tape in the video camera was running low, and defendant Minnix ordered someone to go get

20  a new tape and battery for the camera.  *Id.*; Exh. E, #22-2, p. 2.  At the same time, defendant Horsley

21

22       [3]    Defendants failed to authenticate the video recording of the cell extraction, which they
23  submitted to the court as an attachment to their brief (#22-2, p. 4-5).  A full discussion of the requirements
   under Federal Rule of Civil Procedure 56 and Federal Rule of Evidence 901 is presented below.  As the video
24  recording is not properly before the court, the court will not consider this evidence in its Report and
   Recommendation.

25       [4]    Defendants fail to authenticate the copy of OP 405, which they attach as support for their
26  motion for summary judgment (#22-1, p. 2-15).  Further, the cell extraction, which is the basis for plaintiff's
   complaint and defendants' present motion, occurred on January 31, 2010 (#s 5 & 22), while the version of
27  OP 405 that is attached to defendants' motion became effective two months after the incident, on March 31,
   2010 (#22-1, p. 2).  As OP 405 is not properly before the court, nor is it applicable to the current case, the
   court will not consider this evidence in its Report and Recommendation.

3

1    looked into plaintiff's cell and saw that "[he] had some material wrapped around his face and was

2    holding his mattress, rolled up as if to use it as a makeshift shield" (#22, p. 3 & #22-1, p. 18).

3        Defendant Minnix then sprayed tear gas into plaintiff's cell, offered plaintiff a second

4    opportunity to hook up, and moved on to another inmate's cell (#22, p. 3).  A short time later,

5    defendants returned to plaintiff's cell and defendant Minnix asked plaintiff if he was ready to

6    comply. *Id.* at 4. Defendant Minnix sprayed tear gas into plaintiff's cell again and once more asked

7    if plaintiff was ready to comply. *Id.*  The cell extraction team then entered plaintiff's cell; however,

8    the video camera ran out of tape so the events that took place in the cell were not recorded. *Id.*; Exh.

9    E, #22-2, p. 2.  Defendant Perkins claims that he "did not observe what took place in [plantiff's] cell

10   as [he] wait[ed] by the stairs on the tier for a new tape to be delivered" (#22-2, p. 2).

11       Defendants note that during the cell extraction, plaintiff stabbed  senior correctional officer

12   Stubbs with a make-shift weapon, which defendant Deeds was "subsequently able to wrestle . . .

13   from [plaintiff]" (#22, p. 4 & #22-1, p. 25).  The cell extraction team secured plaintiff in restraints

14   and escorted him from the cell so that he could receive medical attention and the team could "strip

15   out his cell pursuant to ESP's standard operating procedure" (#22, p. 4).

16       The video recording of the extraction resumes "with [plaintiff] being held face against the

17   wall by several officers as his cell was being 'stripped out' pursuant to prison policy and while he

18   was awaiting a medical evaluation to determine whether he needed medical treatment." *Id.*  At this

19   time, defendant Minnix instructed officer Stubbs to show his puncture wound to the video camera,

20   which was caused by plaintiff's attack with the hand-crafted weapon. *Id.*  Defendant Minnix also

21   showed the camera the weapon plaintiff used. *Id.*  At defendant Minnix's direction, the officers

22   holding plaintiff twice took him down to the ground. *Id.*  Medical personnel evaluated plaintiff's

23   injuries, noting that he suffered "a swollen right eye, a bloody nose and some bruising and abrasions

24   on his body," injuries that correctional nurse Gardner determined did not require medical treatment.

25   *Id.* at 4-5; Exh. G, #22-2, p. 7.  Defendants Horsley, Postma, Deeds, and Perkins all submitted

26   declarations stating that they did not witness or apply force that they would regard as excessive (#22-

27   1, p. 18, 22, 25 & #22-2, p. 3).

4

1    Given this sequence of events, defendants first argue that applying the *Hudson* factors to the

2    facts in this case, reveals that defendants used reasonable force, necessary to subdue plaintiff. *Id.*

3    at 6.   Defendants specifically note that plaintiff's injuries were not serious; plaintiff resisted

4    extraction by turning his cell lights off and refusing to comply, making force necessary; the officers

5    applied force "commensurate with the need to secure [plaintiff];" defendants perceived a threat

6    posed by plaintiff and his use of a weapon; and, defendants sought to temper the force by requesting

7    plaintiff's compliance on several occasions.   *Id.* at 6-8.   Defendants contend that plaintiff's

8    allegations of force, including his claim that he was punched in the face a dozen or more times in

9    his cell, are not supported by the video recording and the officers' declarations. *Id.* at 8-9.

10   Specifically, defendants believe that the officers' statements are "consistent with the recording of

11   the incident as opposed to [plaintiff's] declaration," which defendants believe is "self-serving [ and]

12   lacking detailed facts and any supporting evidence."   *Id.* at 8.

13   Defendants also argue that defendant Perkins simply recorded the cell extraction and,

14   therefore, did not participate in removing plaintiff from his cell, nor did he observe the cell

15   extraction, as he was in the stairwell awaiting a new tape and battery. *Id.* at 10.   Defendants believe

16   defendant Perkins should be awarded summary judgment and dismissed.   *Id.*   Defendants further

17   argue that defendants Horsley, Postma, and Deeds acted at defendant Minnix's direction; therefore,

18   defendants "request that the Court evaluate their personal involvement only in terms of the degree

19   of force that they used on [plaintiff]," not for the decision to use physical force.   *Id.*   Additionally,

20   defendants argue that defendants Horsley, Perkins, Postma, and Deeds should not be held

21   accountable for count two, deliberate indifference to plaintiff's medical needs, as they did not

22   personally participate in any purported denial of medical treatment.[5]   *Id.*

23   Finally, defendants argue that if the court believes there is a genuine issue of material fact

24   in the case, defendants are entitled to qualified immunity "because it would not be reasonable for

25   them to conclude under the circumstances that what they did was illegal."   *Id.* at 12.   Defendants

26

27      [5]      As the court noted above, when the court screened plaintiff's complaint it only allowed the
deliberate indifference to medical needs claim to proceed against defendants Minnix and John Doe #4.
Therefore, defendants Horsley, Perkins, Postma, and Deeds are not names as defendants for plaintiff's second
count.

1   state that because the officers "did not independently decide to use force on [plaintiff]," because

2   plaintiff "attacked [them] with a weapon" during the extraction, and because defendant Minnix's

3   motivation in ordering the use of force was not malicious, the court should find that their actions are

4   protected by qualified immunity.  *Id.*

5          In his opposition, plaintiff explains that the relevant acts for the excessive force claims

6   included in his complaint relate to force that "was applied after plaintiff was restrained and totaly

7   [sic] compliant" (#25, p. 2).  Plaintiff explains:

8         What ever happened when that door on plaintiff's cell opened and the time from then
      till plaintiff was compliant, is not at issue here.  Plaintiff in fact chose to fight the

9         officers that he knew wished to assault him, and its [sic] alleged plaintiff stabbed an
      officer durring [sic] the extraction which plaintiff has freely admitted.  Ten officers

10        in riot gear, with helmets with face sheilds [sic], body armour [sic], boots, and elbow
      and knee pads all dog piled plaintiff.  That was the end of plaintiff's "fight."  And

11        that force was needed and plaintiff knows that and has no problem with that.
      Plaintiff stopped all his struggling at that point. There was no reason for plaintiff to

12        resist unless plaintiff wanted a broken arm, which plaintiff did not.  To be clear
      plaintiff is not alleging an Eighth amendment violation for force used to subdue him

13        and secure him.

14  *Id.* at 8.  Rather, plaintiff contends that the constitutional violations related to the force applied

15  during the cell extraction are as follows: (1) defendant Perkins turned off the video camera "so

16  officers could assault plaintiff un documented [sic], which he believes "goes to . . . failure to

17  protect;" (2) defendant Postma rammed plaintiff's head into the sally port doors, which plaintiff

18  argues is excessive force; (3) defendant Deeds "beat plaintiff's head in to a wall," which plaintiff

19  believes is excessive force; (4) defendant Horsley, a senior corrections emergency response team

20  member, "knew plaintiff should not have been extracted from his cell," but did not stop the event

21  and, as a result, "under his eye and evidently with his own participation several inmates were

22  assaulted," which plaintiff believes is a failure to protect.  *Id.* at 9, 11-13.  Plaintiff also states that

23  defendant Minnix threatened inmates on the unit by stating that if anyone challenged his authority

24  they would "bleed like bitches," directed defendant Perkins to turn off the video camera prior to

25  extracting plaintiff from his cell, interfered with the administration of medical assistance to plaintiff

26  following the cell extraction, and ordered officers holding plaintiff to take him to the ground if he

27  resists.  *Id.* at 2, 5, 8, 13.  Plaintiff claims he "was punched in the face a dozen or so times," but he

1    does not identify a specific attacker in his opposition.  *Id.* at 8.

2         Plaintiff's opposition primarily addresses his excessive force claims in count one of his

3    complaint; however, plaintiff also references his deliberate indifference claim and concedes that

4    count two does not involve the actions of defendants Perkins, Postma, Deeds, and Horsley.  *Id.* at

5    13.  Rather, plaintiff contends that defendant Minnix "interfered with Mr. Garner," only allowing

6    him to wipe plaintiff's face, rather than treat plaintiff's injuries.  *Id.* at 6.  Plaintiff also attaches two

7    medical kites, one that documents that plaintiff was seen by a physician on February 5, 2010,  and

8    another that plaintiff submitted which states that he is aware that no other treatment is available for

9    a concussion, but he "just want[s] to have this in [his] medical chart for if it gets worse."  *Id.* at 35,

10   37.

11        Plaintiff also attaches two declarations (#25, pp. 39-43) and submits several affidavits (#27)

12   from inmates regarding the events that occurred on January 31, 2011.  Additionally, plaintiff submits

13   a supplement to his opposition because he did not have an opportunity to view the video until after

14   he submitted his opposition (#29).  Defendants provided plaintiff with a letter stating that they did

15   not oppose a supplement to his opposition, given that ESP officials temporarily misplaced the video.

16   *Id.* at 3. As the court is not considering the video evidence, it is unnecessary for the court to detail

17   the arguments presented in plaintiff's supplement to his opposition.

18        In their reply, defendants note that plaintiff "takes no issue with the force Defendants used

19   to enter his cell and restrain him but contends excessive force was applied after he has already been

20   placed in restraints and was compliant" (#26, p. 2).  Defendants seem to suggest that the video

21   recording of the events, including plaintiff's take downs, passage through the sally port doors, and

22   return to his cell when "coupled with Defendants' declarations, collectively indicate no malicious

23   acts by Defendants."  *Id.* at 3.

24        Defendants admit that they did not record the entire cell extraction, and note that generally

25   "the testimony of one person against another can generate a genuine issue of material fact."  *Id.*

26   However, defendants argue that because plaintiff "cannot identify who allegedly hit him, who

27   rammed him into the sally port door as he was taken to the hallway, and who pinched him while he

1  was standing in the hallway," there is no issue of fact in this case. *Id.* Further, defendants contend:

2  "Whatever injuries Plaintiff sustained off-camera would have taken place shortly after the officers

3  discovered he had a weapon. [Defendants] had to make judgment calls in a tense and uncertain

4  situation." *Id.* at 4. Defendants also point out that as to defendants Horsley and Perkins, they were

5  participating in a cell extraction, and the "deliberate indifference standard does not apply in the

6  context of quelling a prison disturbance." *Id.* Defendants attach to their reply an unauthenticated

7  image of the weapon plaintiff used to attack officer Stubbs (#26-1).

8       The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the

9  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the

10  benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.

11  1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

13  **A.    Discussion**

14       **1.    Summary Judgment Standard**

15       Summary judgment allows courts to avoid unnecessary trials where no material factual

16  disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

17  The court grants summary judgment if no genuine issues of material fact remain in dispute and the

18  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view

19  all evidence and any inferences arising from the evidence in the light most favorable to the

20  nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme

21  Court has noted:

22           [W]e must distinguish between evidence of disputed facts and
             disputed matters of professional judgment. In respect to the latter,
23           our inferences must accord deference to the views of prison
             authorities. Unless a prisoner can point to sufficient evidence
24           regarding such issues of judgment to allow him to prevail on the
             merits, he cannot prevail at the summary judgment stage.
25

26  *Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material

27  facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 251 (1986).

8

1    The moving party bears the burden of presenting authenticated evidence to demonstrate the

2    absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

3    (1986); *see Orr. v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) (articulating the standard

4    for authentication of evidence on a motion for summary judgment).  Once the moving party has met

5    its burden, the party opposing the motion may not rest upon mere allegations or denials in the

6    pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.

7    *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time

8    for discovery, against a party who fails to make a showing sufficient to establish the existence of an

9    element essential to that party's case, and on which that party will bear the burden of proof at trial.

10   *Celotex*, 477 U.S. at 322-23.

11   **B.    Analysis**

12   Defendants ask this court to grant summary judgment on plaintiff's excessive force claim

13   against all defendants, arguing that the force applied to extract plaintiff from his cell was necessary

14   and reasonable given the need to restore order to the unit and the threat presented by plaintiff's use

15   of a weapon (#22, p. 9).  Further, defendants request that the court grant summary judgment as to

16   defendants Perkins and Horsley, as they did not personally participate in the cell extraction, and also

17   grant summary judgment as to defendants Horsley, Perkins, Postma, and Deeds related to plaintiff's

18   deliberate indifference claim, as they did not personally participate in denying plaintiff medical

19   treatment.  *Id.* at 10.   Finally, if the court finds that there is a genuine issue of material fact,

20   defendants believe that they are entitled to qualified immunity.  *Id.* at 12.

21   Plaintiff claims that after defendants Postma, Deeds, and several John Doe officers restrained

22   and disarmed him in his cell, they engaged in excessively violent acts against him, including

23   punching him, slamming his head into a sally port door and the wall of his cell, body slamming him

24   to the ground, and pinching and twisting his skin (#25, p. 4, 9–13).  Plaintiff argues that "once he

25   was disarmed, restrained, and compliant, force should have ceased to be applied." *Id.* at 19.  Plaintiff

26   further alleges that defendant Minnix instructed defendant Perkins to turn the video camera off to

27   allow the defendants to assault plaintiff undocumented, and directed officers to take plaintiff down

if he did not comply. *Id.* at 9.  Plaintiff further believes that defendants Pratt and Horsley should be held accountable for failing to protect him from the violent acts.  *Id.* at 13.  Plaintiff believes that there is a "serious genuine issue of material fact regarding Defendants' use of excess [sic] force on Plaintiff on January 31, 2010," which precludes summary judgment. *Id.* at 20.

### 1.    Authentication of Evidence

Only evidence that would be admissible at trial may be considered by the court in ruling on a motion for summary judgment.  *Orr*, 285 F.3d at 773 (9th Cir. 2002) (citing *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  Rule 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The Ninth Circuit has repeatedly held that unauthenticated documents – documents that do not have a proper foundation – may not be considered on a motion for summary judgment.  *Orr*, 285 F.3d at 773 (citing *Cristobal v. Seigel*, 26 F.3d 1488, 1494 (9th Cir. 1994), *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989), *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988), *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) *and Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976)); *see also United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) ("a plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more entitled to a judgment... than is a plaintiff who has fully tried his case and who had neglected to offer evidence sufficient to support a finding on a material issue upon which he bears the burden of proof") (internal citations omitted).  For the court to consider the evidence

attached to a motion for summary judgment, the documents must be "authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*, 831 F.2d at 925 (citation omitted).

Defendants fail to authenticate the video recording of the cell extraction, the photograph of the weapon plaintiff used on officer Stubbs, or the copy of OP 405. Therefore, the court will not consider this evidence in its review of the present motion. However, the court notes that even if it had relied on the video recording of the cell extraction, defendants admit to not recording their removal of plaintiff from his cell, which is central to the instant dispute regarding the reasonableness of the force employed once plaintiff was restrained. It is unlikely that the video recording would resolve outstanding questions of fact about the force used in plaintiff's cell after he was restrained.

### 2.    Excessive Force

#### i.    Merits of the Claim

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Id.* at 7.

Additionally, the extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id.* Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Id.* That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id.* at 9. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official,

11

1    "[not] every malevolent touch by a prison guard gives rise to a federal cause of action. Id. "Not

2    every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,

3    violates a prisoner's constitutional rights." *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.

4    1973), *cert. denied sub nom*. *Johnson*, 414 U.S. 1033 (1973)). The Eighth Amendment's prohibition

5    on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimus*

6    uses of physical force. *Id.* at 9-10.

7         As the balancing of relevant factors in excessive force cases "nearly always requires a jury

8    to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has]

9    held on many occasions that summary judgment or judgment as a matter of law in excessive force

10   cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also*

11   *Lolli v. County of Orange*, 351 F.3d 410, 415-16 (9th Cir. 2003); *Liston v. County of Riverside*, 120

12   F.3d 965, 976 n.10 (9th Cir. 1997) (citing several additional cases supporting this proposition).

13        The parties agree that defendants' decision to apply force to remove plaintiff from his cell

14   was reasonable. However, they dispute whether the force defendants employed during the cell

15   extraction, after defendants disarmed plaintiff and secured him, was reasonable. Defendants

16   acknowledge that there is not a video recording of this portion of their encounter with plaintiff to

17   resolve any outstanding questions about what occurred in plaintiff's cell, but urge this court to award

18   summary judgment based on the video coverage of the remaining portions of the interaction with

19   plaintiff, defendants' declarations, and the fact that plaintiff injured an officer with a handmade

20   weapon. As noted above, the court declines to rely on the video submitted by defendants in order

21   to make its determination, as the video was not properly authenticated. Further, the video does not

22   resolve the outstanding factual dispute about the reasonableness of the force applied by defendants

23   because it does not capture the cell extraction.

24        Defendants ask this court to find that the force employed by defendants was reasonable given

25   plaintiff's use of a weapon and his refusal to comply with orders. While the court can understand

26   why such tense and dangerous circumstances may lead to the use of force in order to subdue or

27   restrain an inmate, the current dispute is about the force used against plaintiff after he was restrained

1    and defendants removed the weapon from his possession.  It is unclear to the court why defendants

2    would continue to feel threatened in this situation or why ongoing use of force would be necessary

3    to restore safety, as plaintiff was already restrained.

4          If, as plaintiff claims, defendants engaged in such acts as defendant Deeds ramming

5    plaintiff's head into the cell wall or defendant Postma slamming him into a sally port door, it seems

6    quite clear to the court that such acts are wanton and unnecessary.  On the other hand, if these acts

7    did not occur after defendants restrained plaintiff, as defendants claim, then the force used to subdue

8    plaintiff could be considered necessary in light of the danger posed by plaintiff's use of a weapon.

9    In other words, absent subsequent violent acts, defendants' use of force would be reasonable.  In this

10   case, the court is left to weigh plaintiff's version of events, as described in his opposition and

11   declaration, against defendants' motion and declarations, which state that they did not witness or

12   apply force they consider to be excessive.  The court may not resolve such a factual dispute on

13   summary judgment.

14                    **ii.    Defendants' Personal Participation**

15         Defendants ask the court to award summary judgment to defendants Perkins and Horsley

16   because plaintiff did not allege that they used force against him.[6]  Defendant Perkins states that he

17   did not witness the events that took place in the cell, as he was standing in the stairwell awaiting a

18   replacement tape and battery.  Defendant Horsley claims that he did not "witness any force used on

19   [plaintiff] that [he] would regard as excessive."  However, plaintiff notes that defendant Perkins

20   turned the camera off to allow his beating without documentation.  Further, plaintiff argues that

21   defendants Perkins and Horsley participated in the event by refusing to aid plaintiff as he was being

22   beaten.  Plaintiff believes that defendants Perkins and Horsley were deliberately indifferent to his

23   needs during the beating.

24   _____

25         [6]    Defendants also argue that defendants Horsley, Postma, and Deeds acted at defendant
     Minnix's direction; therefore, defendants "request that the Court evaluate their personal involvement only
26   in terms of the degree of force that they used on [plaintiff]," not for the decision to use physical force.  As
     noted above, the parties agree that the decision to use force was reasonable in light of the prison disturbance
27   caused by the inmates flooding the unit.  Therefore, the relevant inquiry is related to the amount of force
     employed by defendants after they restrained plaintiff.

1    First, "[t]o sustain an action under Section 1983, a plaintiff must show (1) that the conduct

2    complained of was committed by a person acting under color of state law; and (2) that the conduct

3    deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrader,* 879 F.2d 583,

4    587 (9th Cir. 1989), *cert. denied*, 498 U.S. 938 (1990).   A person deprives a plaintiff of his

5    constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits

6    to perform an act which he is legally required to do that *causes* the deprivation."   *Leer v. Murphy*,

7    844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)

8    (emphasis in original).

9    Second, defendants correctly note that the deliberate indifference standard does not apply "in

10   the context of quelling prison disturbance" (#26, p. 4 (citing *Hudson*, 503 U.S. 1, 6 (1992)).   Rather,

11   the court must consider whether "the force was applied in a good faith effort to maintain or restore

12   discipline or maliciously and sadistically for the very purpose of causing harm."   *Hudson*, 503 U.S.

13   at 6 (quoting *Whitley*, 475 U.S. at 320-21 (1986)).

14   In this case, plaintiff accuses defendant Perkins of turning off the camera to allow defendants

15   to beat him without documentation, and for subsequently failing to protect him.   Plaintiff also

16   accuses defendant Horsley of failing to protect him from the beating, despite his training and

17   authority as a senior officer on the Correctional Emergency Response Team ("CERT").   While these

18   acts do not constitute the direct application of force against plaintiff, the court finds that they are

19   omissions or failures to act to protect defendant, which may have resulted in the deprivation of his

20   constitutional rights.   A failure to act can constitute conduct that deprives a plaintiff of his

21   constitutional rights within the meaning of Section 1983.   Further, as detailed above, plaintiff claims

22   that the acts of excessive force occurred after he was restrained; arguably, a time after which

23   defendants addressed any threat of unrest that plaintiff posed.   Therefore, defendants are not excused

24   from potential liability for their indifference simply because the encounter began as a planned use

25   of force to quell a prison disturbance, particularly when it seems that the operation may have

26   degenerated into the application of unreasonable and unnecessary force.

27   Therefore, the court declines to award summary judgment to defendants Perkins and Horsley,

1 as there is a genuine question of material fact as to their participation in the events that occurred on

2 January 31, 2010.

3     **3.    Qualified Immunity**

4     "The doctrine of qualified immunity protects government officials from liability for civil

5 damages insofar as their conduct does not violate clearly established statutory or constitutional rights

6 of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d

7 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

8 L.Ed.2d 396 (1982). "In considering a claim of qualified immunity, the court must determine

9 'whether the facts that plaintiff has alleged . . . make out a violation of a constitutional right,' and

10 'whether the right at issue was clearly established at the time of the defendant's alleged

11 misconduct.'" *Id.* (quoting *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815, (2009)). Whether

12 a right is clearly established turns on the "objective legal reasonableness of the action, assessed in

13 light of the legal rules that were clearly established at the time it was taken." *Id.* "[A]ll but the

14 plainly incompetent or those who knowingly violate the law have immunity from suit; officers can

15 have a reasonable, but mistaken, belief about the facts or about what the law requires in any given

16 situation." *Id.*

17     Here, as indicated above, there are outstanding questions of material fact regarding

18 defendants' conduct.  It would be understandable for defendants to claim that, in light of the

19 dangerous circumstances of disarming an inmate, the application of force to restrain him was

20 reasonable.  However, the instant dispute is about the amount of force defendants applied *after* they

21 disarmed and restrained plaintiff.  There is simply no merit to the argument that defendants should

22 be shielded from liability because they did not know that beating an inmate while he is restrained

23 is unlawful or because they believed such conduct is reasonable.  If, as plaintiff alleges, defendants

24 engaged in violent acts against him after he was restrained, such as punching him in the face or

25 beating his head against a wall, defendants would surely have been aware of the unlawfulness of

26 their actions.  There are simply too many unanswered questions regarding defendants' conduct to

27 apply the shield of qualified immunity.  Therefore, the court declines to grant summary judgment

15

to defendants based on qualified immunity.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court recommends that defendants' motion for summary judgment (#22) be **DENIED**.  The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#22) be **DENIED**.

**DATED**: July 1, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**

16